IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| AMANDA ALLEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| DR. JOE DONALD HEATH, in his | § | |
| Individual and official capacities | § | |
| HANNAH HEARN, and NWPROPERTY | § | |
| MANAGEMENT, LLC d/b/a NWP | § | |
| MANAGEMENT | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff, Amanda Allen, complains of Defendants, Dr. Joe Donald Heath ("Heath"), Hannah Hearn ("Hearn"), and NWPROPERTY MANAGEMENT, LLC d/b/a NWP MANAGEMENT ("NWP"), as follows:

**I.**

**Parties**

1. Plaintiff, Amanda Allen, is an individual residing in Smith County, Texas. At all relevant times, she was a public employee of the Smith County Adult Probation Department.

2. Defendant, Dr. Joe Donald Heath, is the Director of the Smith County Community Supervision and Corrections Department (also referred to as Smith County Adult Probation Department and/or CSCD) located in Smith County, Texas. He may be personally served with citation at, 217 E. Line Street, Tyler, 75702, Smith County Texas.

3. Defendant, Hannah Hearn, is an individual who may be served with process at her place of employment, NWP Management, 4411 Old Bullard Rd, Ste. 600, Tyler, Texas, 75711.

4. Defendant NWPROPERTY MANAGEMENT, LLC d/b/a NWP MANAGEMENT is a corporation with its principle place of business in Smith County, Texas. NWP may be served by serving its registered agent Roland Derwood Wright at 16578 Kingston Ct., Tyler, Texas, 75703.

## II.

## Jurisdiction and Venue

5. This Court has jurisdiction over Ms. Allen's First Amendment claims under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over Ms. Allen's defamation and tortious interference with employment claims under 28 U.S.C. § 1367 because these claims are so related to her federal claims that they form part of the same case and controversy. The factual bases of Ms. Allen's First Amendment claims, which support jurisdiction, are detailed in the paragraphs below and incorporated here by reference.

## III.

## Background Facts

6. A substantial portion of the acts and omissions giving rise to Ms. Allen's claims occurred in Smith County, Texas. Venue is proper in this district and division under 28 U.S.C. § 1391.

7. This case involves the exercise of Free Speech in a public institution and the right of a mother to protect the safety of her family and other families in the state of Texas from

living next to an unregistered sex offender. The case stems from Heath's deprivation of Ms. Allen's right to Free Speech under the First Amendment of the Constitution and the deprivation of her liberty interests without due process under the Fourteenth Amendment. It also involves Hearn's conduct as an NWP employee in defaming Ms. Allen, and tortiously interfering with her employment with Smith County CSCD.

8. Smith County CSCD is a publicly supported, adult probation department in and for Smith County. Dr. Heath served as CSCD's director during the violations of Ms. Allen's rights. Under Texas law, Heath has authority to make Smith County CSCD's personnel decisions.

9. Smith County CSCD employed Ms. Allen for over ten years before unlawfully terminating her employment effective March, 31 2015. Allen's employment was subject to a terminable at will employment agreement, terminable within the guidelines of CSCD General Policies and Procedural Manual. Before her termination, Ms. Allen was a probation officer, responsible for assisting adult individuals to successfully complete court-ordered community supervision or probation.

10. Ms. Allen lives in a neighborhood in Tyler, Texas, wherein NWP rents residential properties to tenants. The residence next to Ms. Allen's home is an NWP rental property. Prior to Ms. Allen's termination, NWP rented the property to an individual who had been adjudicated under the Texas criminal justice system for aggravated sexual assault of a child (herein referred to as "Hester"). Frequently, yelling and female screaming came from Hester's home. Vehicles came and went from the Hester residence at all hours of the night. Complaints from other neighbors were made to law enforcement regarding the tumult that emanated from the Hester residence.

11. Prior to her termination, Allen recognized Hester's name as being associated with the last name of a person who had been under CSCD's supervision years prior. Through publicly available research, Allen discovered that Hester had been placed on deferred adjudication for aggravated sexual assault of a child, a first degree felony, in Brazos County, Texas. The publicly available criminal case search also reveals that Hester was unfavorably discharged from community supervision on September 23, 2013. Allen then consulted the Texas Sex Offender Registration Program and discovered Hester was not registered with the Texas Department of Public Safety Sex Offender Registry.

12. Texas law requires any person with a reportable conviction or adjudication (which includes deferred adjudication) for an offense of aggravated sexual assault after 1997 to register with the Texas Department of Public Safety Sex Offender Registry. *See Texas Code of Criminal Procedure, Chapter 62.* This is a requirement, even if such registration is not a court-ordered condition of community supervision.

13. On Wednesday, March 25, 2015, Ms. Allen contacted NWP, the company who was renting the house to Hester. Ms. Allen inquired what NWP's policy was on renting to sex offenders, as it is common knowledge that rental property companies maintain policies generally opting not to rent to sex offenders. Allen believed that NWP was likely unaware that Hester was a sex offender. NWP informed Allen that it had a general policy against renting to sex offenders. Allen inquired if NWP was aware that Hester was a sex offender. NWP advised that it was aware that Hester was a sex offender, but that it had made an exception to its general policy since NWP had spoken to Hester's probation officer, and that he "had done great on probation."

Believing NWP to be merely placating Ms. Allen, and not being truthful, Ms. Allen took NWP to task and advised NWP that the public records disagreed with the assessment that Hester "had done great on probation." Ms. Allen advised NWP that she also worked for CSCD, and was aware that NWP's assessment of Hester's probation was untrue. Allen did not advise NWP of her employment with CSCD until NWP had made the untrue statement about Hester's successful completion of probation. Allen did not provide any detail on how or why Allen's employment gave her this belief. Allen informed NWP about the publicly available record indicating aggravated sexual assault of a child and "unfavorable discharge" from community supervision. Allen did not claim nor intimate to have conducted a criminal background search or a criminal history search utilizing CSCD resources. Allen did not disclose any information that could be considered "personal" or "confidential" to Hester's file with CSCD, as those terms are defined by CSCD policy and/or code of ethics, or the Code of Ethics for the Texas Department of Criminal Justice Community Justice Assistance Division.

14. On Thursday, March 26, 2015, Hannah Hearn an employee of NWP sent an email to Janet Fugler, an employee of CSCD, accusing Ms. Allen of various false criminal acts ranging from official oppression to unauthorized use of a criminal history. *See Exhibit A, Hearn Email.* Within the email Hearn published the following false statements of fact concerning a conversation that Hearn allegedly had with Allen:

- That Allen had performed a criminal background check on Hester.

- That Allen stated Hester "had not completed his probation for his crime."

- That Allen stated "as an employee with Smith County probation, she (Allen) has access to all of his (Hester's) records."

- That NWP "had no other complaints or issues with this (Hester's) family."

- That Allen was engaged in "racial profiling" and/or "harassment" of the Hester family.

- That Allen was using "County resources to appease personal vendettas;" and

- That Allen "using her privileges as a Smith County Probation officer to run background checks on her neighbor as a means to harass and make life difficult for them is not only unethical, but illegal."

15. Hearn concludes her email by stating: "I trust that you will do your best to prevent this from happening again." As a direct result of Hearn's email and communications with CSCD, Ms. Allen's employment with CSCD was terminated.

16. On March 31, 2015, Ms. Allen was terminated from her employment with CSCD. In terminating Ms. Allen's employment, CSCD cited alleged violations of Smith County CSCD policy and the Code of Ethics established by the Texas Department of Criminal Justice Community Justice Assistance Division. Heath concluded that Ms. Allen "used her official position as a community supervision officer to pressure Nanci Wright Property Management into evicting" Hester. Ms. Allen's termination constituted an adverse employment action.

17. Heath quoted the following Code of Ethics established by the Texas Department of Criminal Justice Assistance Division in terminating Ms. Allen's employment:

   a. "…a community supervision officer shall not use his or her authority as a supervising officer or his or her position to extract any personal gain from a defendant or exert any undue duress or harass any defendant."

    b. "…a community supervision officer shall disclose no personal information concerning a defendant other than in his or her official capacity and in accordance with any applicable law and administrative policy."

18. CSCD's Termination Policy states: "The Department Director has the right to terminate any employee at any time for any reason, or no reason at all, in accordance with the 'at-will' doctrine. However, under no circumstances will an employees constitutional rights be violated in the process." In terminating Ms. Allen's employment, Heath violated Allen's First Amendment right to free speech and deprived her of important liberty interests without due process required by the Fourteenth Amendment, as discussed in more detail below, and therefore violated CSCD's policy in relation to Ms. Allen's constitutional right to free speech.

19. At the time of Allen's termination, CSCD maintained a mandatory Code of Ethics Violations Procedure which required the appointment of an investigative board consisting of two (2) supervisors selected by the Director and one (1) staff line officer to be selected by the accused employee to process reported violations of the Code of Ethics of the Community Justice Assistance Division.

20. *Despite having accused Ms. Allen of violations of the Code of Ethics of the Community Justice Assistance Division as well as CSCD ethics, Heath failed to follow CSCD's policy regarding code of ethics violations in the following respects: (1) by failing to appoint an Investigative Board; (2) by failing to follow the Investigative Board procedure; and (3) by depriving Ms. Allen a review of Heath's determination that Ms. Allen had violated the Code of Ethics of the Community Justice Assistance Division.*

21. Based on information and belief, NWP has since commenced eviction proceedings to evict Hester from the residence he rented from NWP.

V.

**First Amendment (Free Speech) Retaliation
42 U.S.C. § 1983**

22. Ms. Allen repeats and re-alleges the allegations contained in Paragraphs 1 through 19 as if fully stated herein.

23. Retaliation by an employer for an employee's speech regarding a matter of public concern is actionable under 42 U.S.C. § 1983.

24. Ms. Allen engaged in a constitutionally protected activity in exercising her right as a private citizen to inquire and express concern to NWP, the landlord of a tenant who had been adjudicated for aggravated sexual assault of a child, especially when that same tenant lived next to Ms. Allen's family and in the same neighborhood as other children.

25. As a result of this constitutionally protected activity or, in the alternative, motivated at least in part by the constitutionally protected activity, Heath and CSCD terminated her employment.

26. NWP's policy of renting to a tenant who was also a sex offender was a matter of public concern, and Ms. Allen's interest in commenting on this practice outweighed CSCD's interest in promoting efficiency. Specifically, CSCD's interest in promoting efficiency within the organization was not adversely affected by Ms. Allen's speech, as her speech did not violate any policy of Smith County CSCD or the Code of Ethics established by the Texas Department of Criminal Justice Community Justice Assistance Division because Hester (the tenant) was no longer a defendant and no

longer under supervision by CSCD.[1] Most importantly, Allen did not disclose any "private or confidential" information regarding Hester as such is defined by CSCD and Texas Department of Criminal Justice Community Justice Assistance Division policy. As evidenced by the failure to follow CSCD policy and procedure for violations of code of ethics, Heath's decision to ignore CSCD policy and procedure in this regard demonstrates that such alleged violations committed by Allen did not in fact occur.

27. As a result of Heath's individual and official deprivation of Ms. Allen's constitutionally protected rights, Ms. Allen suffered damages. These damages include compensatory damages for lost earnings in the past and future, loss of benefits in the past and future, out of pocket expenses, loss of reputation, and mental anguish.

28. Further, she seeks recovery of her attorney's fees and all recoverable court costs.

## VI.

### Violation of Allen's Fourteenth Amendment Due Process Rights

29. "While [the Supreme Court] has not attempted to define with exactness the liberty … guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, to establish a home and bring up children, to worship God

---

[1] Publicly available records available at http://justiceweb.co.brazos.tx.us, demonstrate that Hester was unfavorably discharged from community supervision on September 23, 2013.

according to the dictates of his own conscience, and generally to enjoy this privileges long recognized … as essential to the orderly pursuit of happiness by free men."[2]

30. This case involves Ms. Allen's well-established liberty interest in her good name and future employment opportunities. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to [her], notice and an opportunity to be heard are essential."[3] Stated another way, "a public employer who fires (or refuses to rehire) an employee in a manner that sullies the employee's good name and restricts [her] future employment opportunities deprives [her] of important liberty interests protected by the Fourteenth Amendment."[4]

31. Ms. Allen was a public employee of CSCD. As noted above, CSCD - through Heath - abruptly terminated Ms. Allen for "ethical violations" purportedly related to her telephone conversation with NWP. Despite the serious - and potentially criminal - implications of these unfounded allegations on Ms. Allen's reputation, Heath took this action without providing any investigatory or "name-clearing" hearing, which the CSCD's own policy and procedure manual provides.

32. Not only did Heath deprive Ms. Allen of this hearing, he publicized the unfounded, false allegations in a letter that he circulated among local judiciary in conjunction with her termination. This information can and has stigmatized Ms. Allen's good name and reputation within the community of her chosen profession. By failing to provide the hearing and circulating false, stigmatizing information, Heath and the Department

---

[2] *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).
[3] *Wisconsin v. Constantine*, 400 U.S. 433, 437 (1971).
[4] *Sciolino v. City of Newport News*, 480 F.3d 642 (4th Cir. 2007).

effectively deprived Ms. Allen of her liberty interest in her good name and future employment opportunities without due process.

33. As a result of Heath's individual and official deprivation of Ms. Allen's constitutionally protected rights, Ms. Allen suffered damages. These damages include compensatory damages for lost earnings in the past and future, loss of benefits in the past and future, out of pocket expenses, loss of reputation, and mental anguish.

## VII

### Tortious Interference with Employment Agreement
### As Against Hearn and NWP

34. Ms. Allen repeats and re-alleges the allegations contained in Paragraphs 1 through 19 as if fully stated herein.

35. A terminable at will employment agreement is the type of agreement recognized under Texas law for which a defendant can be held liable for tortious interference.[5] Allen was an employee of CSCD, and subject to a terminable at will employment agreement, terminable within the guidelines of CSCD General Policies and Procedural Manual. Hearn and NWP had actual knowledge of Allen's employment with CSCD as demonstrated by Exhibit A, and were not parties to said employment agreement. Hearn and NWP published false statements to CSCD regarding Ms. Allen's interaction with Hearn and NWP. Hearn and NWP were aware that their actions would likely result in interference with Ms. Allen's employment agreement as demonstrated by Hearn and NWP's implied request of adverse employment action (i.e. "I trust that you will do your best to prevent this from happening again…"). Hearn and NWP's conduct in publishing false statements of fact to CSCD (as

---

[5] *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex. 1989).

demonstrated by Exhibit A) in order to interfere with her employment agreement with CSCD, was a proximate cause of Ms. Allen's termination by Heath and CSCD.

36. As a proximate result of Hearn and NWP's tortious interference, Ms. Allen suffered damages. These damages include compensatory damages for the pecuniary loss of the benefits of Ms. Allen's employment in the past and future, loss of benefits in the past and future, out of pocket expenses, loss of reputation, and mental anguish.

37. Ms. Allen specifically pleads that as a result of Hearn and NWP's conduct, she is entitled to recover exemplary damages.

## VIII.

### Defamation Per Se As Against Hearn and NWP

38. Ms. Allen repeats and re-alleges the allegations contained in Paragraphs 1 through 19 as if fully stated herein.

39. Hearn and NWP published the above-itemized false statements of fact to CSCD regarding Allen. The following false statements of fact constitute publications that are so obviously hurtful to Allen (as they accuse her of committing criminal acts and/or led to her termination), that they constitute defamation per se:[6]

- That Allen had performed a criminal background check on Hester.

- That Allen stated Hester "had not completed his probation for his crime."

- That Allen stated "as an employee with Smith County probation, she (Allen) has access to all of his (Hester's) records."

---

[6] A false statement will typically be classified as defamatory per se if it injures a person in his office, profession, or occupation; or charges a person with the commission of a crime. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 581 (Tex. App. —Austin 2007).

- That Allen was engaged in "racial profiling" and/or "harassment" of the Hester family.

- That Allen was using "County resources to appease personal vendettas;" and

- That Allen "using her privileges as a Smith County Probation officer to run background checks on her neighbor as a means to harass and make life difficult for them is not only unethical, but illegal."

40. As a proximate result of Hearn and NWP's defamation per se, Ms. Allen suffered damages. These damages include compensatory damages for the pecuniary loss of the benefits of Ms. Allen's employment in the past and future, loss of benefits in the past and future, out of pocket expenses, loss of reputation, and mental anguish.

41. Ms. Allen specifically pleads that as a result of Hearn and NWP's conduct, she is entitled to recover exemplary damages.

## IX.
## Negligence

42. Ms. Allen repeats and re-alleges the allegations contained in Paragraphs 1 through 19 as if fully stated herein.

43. Hearn and NWP owed Ms. Allen a duty to use ordinary care in making representations and in ascertaining the accuracy of information given to others.[7] Hearn and NWP breached said duty by publishing the following false statements to Ms. Allen's employer, CSCD:

- That Allen had performed a criminal background check on Hester.

- That Allen stated Hester "had not completed his probation for his crime."

---

[7] *Edco Production Inc., v. Hernandez,* 794 S.W.2d 69, 76-77 (Tex.App.—San Antonio 1990, writ denied).

- That Allen stated "as an employee with Smith County probation, she (Allen) has access to all of his (Hester's) records."

- That NWP "had no other complaints or issues with this (Hester) family."

- That Allen was engaged in "racial profiling" and/or "harassment" of the Hester family.

- That Allen was using "County resources to appease personal vendettas;" and

- That Allen "using her privileges as a Smith County Probation officer to run background checks on her neighbor as a means to harass and make life difficult for them is not only unethical, but illegal."

44. As a proximate result of Hearn and NWP's conduct outlined above, Ms. Allen was terminated from her employment with CSCD and suffered damages. These damages include compensatory damages for the pecuniary loss of the benefits of Ms. Allen's employment in the past and future, loss of benefits in the past and future, out of pocket expenses, loss of reputation, and mental anguish.

### X.

### Request for Jury Trial

45. Ms. Allen respectfully requests that this matter be tried before a jury.

### Prayer for Relief

46. Ms. Allen respectfully requests that she have a judgment against Heath, Hearn, and NWP awarding her the following damages:

   a. Actual damages;

   b. Compensatory damages in the maximum amount allowed by law;

   c. Prejudgment and post-judgment interest;

    d. Attorney's fees, expert witness fees, and costs of suit; and

    e. Any further legal and equitable relief he is entitled to.

Respectfully submitted,

/s/ *Gregory P. Love*
Gregory P. Love
Texas Bar No. 24013060
**LOVE LAW FIRM**
P. O. Box 948
Henderson, Texas 75653
Telephone: (903) 212-4444
Facsimile:  (903) 392-2267
greg@lovetrialfirm.com

JUSTIN L. JETER
SBN: 24012910
**JETER MELDER, LLP**
1111 S. Akard St., Suite 100
Dallas, Texas 75215
Telephone: 214.699.4758
Facsimile: 214.593.3663
Email: justin@jetermelder.com

**ATTORNEYS FOR PLAINTIFF**